**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THE EASTERN COMPANY, dba EBERHARD MANUFACTURING COMPANY, 21944 Drake Road Strongsville, OH 44149, | ) ) ) ) ) | CASE NO. 1:26-CV-00978 JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES |
| ELIZABETH SPILMAN, S90W32820 Granite Trail, Mukwonago, WI 53149 | ) ) ) ) | JURY DEMAND ENDORSED HEREON |
| Defendant. | ) | |

NOW COMES Plaintiff The Eastern Company dba Eberhard Manufacturing Company ("Eberhard" or "Plaintiff"), and for its Complaint states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     Plaintiff is a Connecticut corporation, registered to do business in the State of Ohio.

2.     Plaintiff operates in Ohio under the registered trade name Eberhard Manufacturing Company, which has its principal place of business located at 21944 Drake Road, Strongsville, OH 44149.

3.     Eberhard is in the business of making hardware products and components primarily used in the automotive industry.

4.     Defendant Elizabeth Spilman ("Spilman") is an individual who currently resides at S90W32820 Granite Trail, Mukwonago, WI 53149.

5.     Spilman is a former employee of Eberhard.

6. Upon information and belief, Spilman is employed at QuickCable Inc. dba QuickCable Corp. ("QuickCable"), which advertises itself as being in the business of making hardware and products primarily used in the automotive industry.

7. Pursuant to 28 U.S.C. §§ 1332 and 1391(b), jurisdiction and venue are proper in this Court.

8. Jurisdiction is proper in this jurisdiction under R.C. 2307.382(A)(3) and/or (6).

## ALLEGATIONS COMMON TO ALL COUNTS

9. Eberhard is in the business of developing and selling hardware and components for the following industries: service bodies, buses, trailers, class 8 trucks, enclosures, military/government, marine, generators, van bodies, automotive, and off-highway vehicles.

10. QuickCable is in the business of developing and selling hardware and electrical components for the following industries: automotive, powersports, recreation, heavy-duty truck/bus, material handling, off-road machines, aviation, marine, and standby/on-line DC power generation.

11. Eberhard has made significant investments in building its business, reputation and customer relationships through its commercial team, who are supported with training, customer service, advertising, promotion and other initiatives.

12. Spilman was employed as the Director of North American Sales at Eberhard in from January 2024 through June 30, 2025.

13. During her time as Director of North American Sales at Eberhard, Spilman acquired and was trusted with Eberhard's confidential information via documents and information concerning aspects of Eberhard's business that were confidential and proprietary in nature, including but not limited to, information relating to Eberhard's employees' competitive

2

pay and benefits structure, vendors, pricing, sales techniques, marketing, business plans, and financial information.

14.     Eberhard's competitive pay and benefits structure offered to its employees is not readily available to the public, and Eberhard invests in its development and review of its total rewards packages to ensure that the Company is staying competitive in the industry.

15.     On or around June 30, 2025, Spilman separated her employment from Eberhard.

16.     Pursuant to Spilman's separation of employment, Spilman entered into a severance agreement with Eberhard ("Severance Agreement"). A true and accurate copy of the Severance Agreement is attached as **Exhibit 1**.[1]

17.     The Severance Agreement contains a Non-Disclosure and Non-Use Obligations clause, which, in pertinent part, states:

> You acknowledge that during the course of your employment with the Company you acquired and/or had access to information and documents concerning aspects of the Company's operations and business that are confidential and proprietary in nature, including, but not limited to, information relating to the Company's actual or potential customers, vendors, pricing, sales techniques, marketing, business plans, financial information, and/or other information constituting the Company's confidential business information and/or trade secrets (the foregoing information is collectively referred to in this letter as "Confidential Information"). You agree not to disclose, directly or indirectly, to any person or entity any Confidential Information, and agree not to use any Confidential Information for your benefit or for the benefit of any third party, including but not limited to any future employer.

18.     The Severance Agreement contains a Non-Disparagement clause, which states:

> You further agree not to make any reckless or maliciously untrue statements, including via social media, concerning the Company or other Released Parties and agree not to do or say anything that would adversely affect the reputation, business, employment relationships, or goodwill currently or in the future enjoyed by the Company or other Released Parties.  Nothing in this Agreement prevents you from discussing or disclosing information about

---

[1] Plaintiff is contemporaneously moving for leave to file Exhibit 1 Under Seal due to its confidential nature.

3

unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful.

19.    The Severance Agreement contains a Confidentiality clause, which in pertinent part, states:

> You and any other person or entity acting on your behalf, agree to keep the terms and conditions of this Agreement confidential and shall not disclose them to any other person or entity, with the limited exception that you may disclose the terms to your spouse or domestic partner, attorney, and/or financial advisor, and you shall be responsible for requiring confidentiality on their part.

20.    Spilman received a lump sum payment pursuant to the Severance Agreement ("Severance Payment") in addition to other good and valuable consideration in exchange for the promises made under the Severance Agreement.

21.    Pursuant to the terms of the Severance Agreement, Spilman is prohibited from disclosing confidential information of Eberhard and using Eberhard's confidential information for her benefit.

22.    In addition, Eberhard's Employee Handbook provides that employees have a duty to protect confidential business and proprietary information both during the employees' employment and after their employment with Eberhard has ended. Specifically, the Confidential Nature of Work provision in the Employee Handbook provides:

> a.    The protection of confidential business information, proprietary information, and trade secrets is vital to the interests and success of the Company. As an associate of this Company, you have a duty to protect this information both during and after your employment.
>
> - Customer and vendor transactions
> - Customer or vendor information
> - Lists of actual or prospective customers
> - Customer or Company financial information
> - Pending projects and proposals
> - Research and development strategies
> - Data processing and computer programs and operations
> - Marketing and sales strategies

4

FP 62392548.9

- Company business methods, processes and systems

Associates who improperly use or disclose trade secrets or confidential business information to anyone outside of the Company will be subject to corrective action or termination of employment and legal action, even if they do not actually benefit from the disclosed information. You also may be subject to legal action if you improperly use or disclose this information even if you are no longer employed by the Company. If you are unsure about the confidential nature of specific information, ask your manager for clarification.

23. On or around December 2025, Spilman began working for QuickCable, as its Vice President of Sales.

24. Spilman is presently employed at QuickCable as QuickCable's Vice President of Sales.

25. Upon information and belief, Spilman solicited the following employees from Eberhard to join QuickCable:

a. Lynn Eastep, Eberhard's Marketing Manager;

b. Steven Ganss, Eberhard's Key Account Manager;

c. Anthony Manns, Eberhard's Key Account Manager.

26. Upon information and belief, Spilman used confidential business information to solicit the above listed employees.

27. Upon information and belief, additional employees of Eberhard have been solicited by Spilman.

28. Upon information and belief, Spilman has engaged in disparagement against Eberhard in her solicitation of the above listed employees, in violation of her Separation Agreement.

29. All three of the above listed employees left Eberhard and joined QuickCable between January 15, 2026 and January 30, 2026.

30. Upon information and belief, Spilman and/or QuickCable told the above-listed

5

employees not to tell Eberhard who their new employer was.

31.     Upon information and belief, Spilman has engaged in a concerted effort, with her new employer, to deprive Eberhard of its key employees in an attempt to harm Eberhard's workforce and its business and using her knowledge of confidential pay and benefit information of Eberhard's employees.

32.     Upon information and belief, Spilman has engaged in disparagement against Eberhard through communications with Eberhard's customers.

33.     On or around February 9, 2026, Spilman received a cease-and-desist letter sent on behalf of Eberhard, reminding Spilman of her obligations and instructing her to immediately cease using or disclosing Eberhard's confidential information.

34.     Spilman has continued to attempt to solicit other employees of Eberhard to join QuickCable, violating the confidentiality and non-disparagement clauses of her severance agreement.

35.     Upon information and belief, Spilman is using Eberhard's confidential information regarding employee pay and benefits to lure employees away from Eberhard to QuickCable by promising them higher pay and better benefits.

36.     Upon information and belief, Spilman is using Eberhard's confidential information, including Eberhard's client lists, business plans, and/or marketing plans for her personal benefit in her employment with QuickCable, and for QuickCable's benefit, in violation of her Severance Agreement.

## COUNT I
### MISAPPROPRIATION OF TRADE SECRETS
**(18 U.S.C. § 1832, *et seq.*)**

37.     Eberhard realleges and incorporates by reference the preceding Paragraphs as if fully set forth herein.

6

38.     Eberhard's trade secrets, including its pay and benefit packages, customer lists, contact and confidential pricing, business planning, marketing strategies, sales and account information, are subject to reasonable efforts by Eberhard to maintain its secrecy and/or confidentiality.  Eberhard's customer information is not generally known or available to the public.

39.     Eberhard's confidential customer information is considered a trade secret under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq.*, because Eberhard derives substantial, independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

40.     Eberhard's pay and benefits packages offered to employees are considered a trade secret under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq.*, because Eberhard derives substantial, independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy to the extent permitted by law.

41.     The information contained in Eberhard's systems and confidential documents are related to products or services used in, or intended for use in, interstate commerce.

42.     Eberhard takes and, at all times relevant hereto, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include: (a) handbook and IT policies; (b) restricting availability of certain confidential information to key employees; (c) physical security measures to protect against the disclosure of sensitive materials to third

FP 62392548.9

parties; and (d) IT security measures, such as password protection for all computers and segregation of certain files so that only employees with a need to access the files can do so.

43. Spilman has been using and/or disclosing Eberhard's trade secret information obtained by Spilman prior to her separation of employment from Eberhard.

44. Spilman has been using and/or disclosing Eberhard's trade secret business plans and marketing strategies obtained by Spilman prior to her separation of employment from Eberhard.

45. Spilman engaged in this conduct despite having a duty to maintain the secrecy of the information on Eberhard's systems and to limit its use, which duty Spilman owed and continues to owe Eberhard.

46. The foregoing conduct by Spilman constitutes an actual and threatened misappropriation and misuse of Eberhard's trade secret information in violation of the DTSA.

47. Unless Spilman is preliminarily and permanently enjoined from the foregoing conduct, Eberhard will be irreparably harmed.

48. Eberhard has suffered, and will continue to suffer, harm from Spilman's ongoing misappropriation of Eberhard's trade secret customer information.

49. Each of the acts of misappropriation alleged herein was done willfully and maliciously by Spilman, thereby entitling Eberhard to its reasonable attorneys' fees and exemplary damages.

## COUNT II
### VIOLATION OF THE OHIO UNIFORM TRADE SECRETS ACT
### (O.R.C. § 1333.61, *et seq.*)

50. Eberhard realleges and incorporates by reference the preceding Paragraphs as if fully set forth herein.

8

51.     Eberhard's trade secrets, including the contact, confidential pricing, financial and policy account information of Eberhard's customers, are intended for use in Eberhard's trade or business.

52.     Eberhard's customer information is included or embodied in a compilation of data maintained by Eberhard in its systems and Eberhard took reasonable precautions under the circumstances to protect its trade secrets, including that all parties with access to its trade secrets were subject to obligations to maintain their secrecy.

53.     Eberhard's customer information is not generally known or available to the public and is not generally known or readily ascertainable by proper means by persons or entities who could obtain economic value from its disclosure or use.

54.     Eberhard's confidential customer information is the subject of reasonable efforts to maintain its secrecy.

55.     Eberhard derives substantial, independent economic value from its confidential customer information because it is not readily ascertainable by proper means by other persons or entities and is subject to reasonable efforts by Eberhard to maintain its secrecy.

56.     During her appointment by Eberhard as an agent of and for Eberhard, Spilman learned of Eberhard's trade secrets, including the contact, confidential pricing, financial and policy account information of Eberhard's customers.

57.     Spilman acquired knowledge of Eberhard's trade secret customer information under circumstances giving rise to a duty to maintain its secrecy and/or limit its use.

58.     Spilman is using and/or disclosing Eberhard's trade secret customer information obtained by Spilman prior to the termination of her Agreement.

9

59.     Spilman engaged in this conduct despite having a duty to maintain the secrecy of the information on Eberhard's systems and to limit its use, which duty Spilman owed and continues to owe Eberhard.

60.     Spilman knew or should have known that she was under a duty to maintain the secrecy of Eberhard's trade secret customer information.

61.     Spilman agreed to keep confidential Eberhard's trade secrets.

62.     The foregoing conduct by Spilman constitutes an actual and threatened misappropriation and misuse of Eberhard's trade secret information in violation of the Ohio Uniform Trade Secrets Act ("OUTSA"), O.R.C. § 1333.61, *et seq.*

63.     Unless Spilman is preliminarily and permanently enjoined from the foregoing conduct, Eberhard will be irreparably harmed.

64.     Eberhard has suffered, and will continue to suffer, harm from Spilman's ongoing misappropriation of Eberhard's trade secret customer information.

65.     Each of the acts of misappropriation alleged herein was done willfully and maliciously by Spilman, thereby entitling Eberhard to its reasonable attorneys' fees and exemplary damages.

## COUNT III
### BREACH OF CONTRACT

66.     Eberhard realleges and incorporates by reference the above numbered paragraphs as if fully set forth herein.

67.     The Severance Agreement is an enforceable contract between Eberhard and Spilman.

68.     Eberhard fulfilled its obligations under the Severance Agreement.

69.     Spilman has breached the Agreement in that she has failed to return the files and information belonging to Eberhard upon termination of the Agreement.

FP 62392548.9

70.     Spilman has breached the Agreement in that she has used the confidential, proprietary and trade secret information of Eberhard for the benefit of Spilman.

71.     Spilman has breached the Agreement in that she has engaged in disparagement against Eberhard in her communications with Eberhard's employees, whom she solicited, and Eberhard's customers.

72.     Spilman's breaches of her post-termination obligations under the Separation Agreement require a disgorgement of the contract value payments previously paid to Spilman as consideration for her adherence to those obligations.

73.     As a direct and proximate result of Spilman's breaches, Eberhard has incurred damages in an amount excess of $75,000.00, to be determined at trial in this matter.

## COUNT IV
### UNJUST ENRICHMENT

74.     Eberhard realleges and incorporates by reference the preceding Paragraphs as if fully rewritten herein.

75.     Eberhard conferred a benefit upon Spilman by providing her with access to its customers, employees, marketing and sales plans, and to develop relationships with Eberhard's customers in order for Spilman to operate as the Director of Sales for North America at Eberhard.

76.     Eberhard conferred a benefit upon Spilman by making payment to her of $13,346.00 intended as additional consideration for Spilman's adherence to the post-termination obligations set forth in the Severance Agreement.

77.     Spilman was aware of the benefits conferred upon her by Eberhard.

78.     As a result of her misconduct as alleged in this Complaint, Spilman has been unjustly enriched, to the detriment of Eberhard, through the use of Eberhard's confidential and trade secret information, including but not limited to customer lists, business plans, and

11

marketing strategies, and through Spilman's retention of the Severance Payment pursuant to the Severance Agreement.

79.     The retention of these benefits by Spilman under the circumstances is inequitable and, therefore, Spilman should be required to disgorge her wrongful gains, which upon information and belief exceed $75,000.00.

WHEREFORE, Plaintiff prays judgment in its favor and against Spilman for:

(i)     Preliminary and permanent injunctive relief as set forth in Count I;

(ii)    Disgorgement of any post-termination payments Eberhard made to Spilman, including, without limitation, the Severance Payment;

(iii)   Damages as are fair and reasonable in an amount to be determined at trial, including actual damages, exemplary damages, punitive damages, equitable relief, pre-judgment and post-judgment interest, costs, and attorneys' fees; and

(iv)    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Amy L. Kullik*
Amy L. Kullik (0069663)
Amanda M. Connelly (0096835)
Madeline G. Ioniță (0102531)
Fisher & Phillips LLP
200 Public Square, Suite 4000
Cleveland, Ohio 44114
Telephone:  440-838-8800
Facsimile: 440-838-8805
akullik@fisherphillips.com
aconnelly@fisherphillips.com
mionita@fisherphillips.com

*Counsel for Plaintiff The Eastern Company dba Eberhard Manufacturing Company*

12